Our final case this morning is 22-12-64, Rogers v. Kijakazi. Yes, Mr. Piemonte? Piemonte, yes sir, your honor. Pardon me. Hope I didn't pronounce you too bad there. You may remove your mask, and we're good to have you here, and you may proceed with your argument, sir. Thank you, your honor. May it please the court, George Piemonte, on behalf of the appellant, Shenette Rogers. I would request of the court to retain three minutes for rebuttal. The ALJ failed to give substantial weight to Ms. Rogers' VA rating of 100% permanent and total disability in this case, and failed to give specific, valid, and persuasive reasons for doing so in accordance with this court's decision in Byrd. The Social Security Administration... Why is Byrd still good law after the regulations changed? I'm going to tell you exactly why it is, your honor, because... Excuse me. Byrd didn't interpret the regulation. Byrd relied on established case law in this circuit, as well as nine other sister circuits. Every circuit except two have ruled that VA disability ratings are important information, or important evidence. The other two haven't decided anything. Before or after the regulation changed? There before. This has been decades. The Fourth Circuit goes back to Deloge in the 80s. We can assume all that's correct, but then the regulation changed. The general rule, I think, in that setting in administrative law is, unless the court has determined that the statute unambiguously requires the consideration of the other agency decision, then whatever the agency is that's adopting the rule can go ahead and adopt the rule. Well, what the regulation does, though, it prevents a meaningful judicial review, because the Social Security Administration has said, sight unseen, that this evidence is neither valuable nor persuasive. Yet this court, in Byrd, said the exact opposite. That was beforehand, though. That was before. That was before the regulation. So the question is, which one controls our precedent, or the Social Security Administration commissioner promulgating regulation? I apologize. They got to abide by their own regulation. That's what the gentleman from the government is going to say. That is what he's going to say, but the... They're not going to follow our precedent anymore. The agency does not mention how it just... Didn't they say theirs was based on the statute? They say ours is not. Correct, but what they've done is it's... I don't want to... What they have said is they've... Under 405G, this court has the right to, or has the duty and right to review agency's decisions and... Take them into account. Take them into account to make sure that... To me, that makes sense. I mean, this lady served in the military, and the military, the Veterans Administration, found her to be disabled under their definition of disability, and now the Social Security Administration, when she applies for disability there, they say, we're not taking that into account because we don't do that. We change the regs, and we have the right, the power, and the obligation to change the regs. Well, they don't give us any way. They don't give the VA any way. Now, you might have sympathy for me that the VA rating or determination ought to carry some weight, but that's not the regulation. That's not what it is, and if the regulations are valid, they supersede the court decision. In which case, they don't have to give a weight. Didn't Judge Watts' opinion in Woods v. Berryhill decide this issue? No. Woods talked about... Let me read you what the footnote says. The claims filed after March 27, 2017, which this is, ALJs must still consider the existence of disability decisions by other entities, which they did, any evidence underlying those decisions, which they did, but are no longer required to provide written analysis about how they consider the decisions from other government agencies. Doesn't that end your argument? No, Your Honor, because that issue wasn't before that court. That's dicta. Now the issue is before this court, and what we've got... That footnote, in your view, is just wrong. I'm not saying it's wrong. I'm saying it's not determinative of this case. But you could still win with an application of... You just can't rely on our prior authority and the VA. Correct, and that's where I'm going to... We've got... Because the ALJ's decision has to be based upon substantial evidence. So what you have is you have the VA looking at the exact same medical evidence that Social Security is looking at. The VA says not only is she... That doesn't carry any weight anymore. No. It's got to be looked at independently. No, but as the district court pointed out... You've only got a little over five minutes. Why don't you tell us why the residual function capacity finding is first not waived, which the government says it is, and then why it's wrong. Just move on from the VA, why don't you? Okay. Well, it's... The residual functional capacity, part of it... I was only prepared to speak on one of them today, but we briefed several. But the one that stands out the most is the sporadic nature of Ms. Rogers' symptoms. She has PTSD. It's severe. The ALJ agreed that. She has severe PTSD. Before you get to the merits, the government says that the argument you make in this court on appeal is not the argument you made to the ALJ, and therefore you waived it. First tell us why the government's wrong there. Because the arguments before the ALJ are not preclusive. It's not a preclusive finding, whatever is argued. What the district court in this court reviews is the evidence in the administrative record. So are you saying that you get to make an argument on the evidence here for the first time that was never presented before? No, Your Honor. What we're making here is about the residual functional capacity of Ms. Rogers. That is always an issue before the ALJ. The ALJ has to make an assessment, given all of the evidence before them, what the claimant's residual functional capacity and ability to engage in work activity remains in light of their severe and non-severe impairments alone and in combination. So to say that that issue wasn't raised, that's always an issue before an ALJ. And how the ALJ assesses the RFC, that's one of the issues that we've raised in the district court as well as this court, and one of which is the fact of the intermittency of her symptoms. Why don't you tell us the best, say, two arguments where the ALJ got the residual function analysis wrong. Your best arguments. Okay. The first, I think, and best is there's ample evidence within the record that during Ms. Rogers' menstrual cycle, her symptoms are worse. That's documented throughout her medical record. The ALJ, and this court has said that you have to take into account the fluctuation of a person's ability to function. But the ALJ said the RFC finding in this case was it's always the same. Every day, every week, every month. But that's not the case. During her menstrual cycle, her... So it's your argument that the ALJ didn't address that point. Correct. He did not account for that period of her symptoms increasing in intensity, frequency, and duration. And the commissioner admitted that the ALJ decision, as they put it, I think is not a model of clarity. He said that. Correct. And it cited rules that were not applicable to her claim. Well, exactly. Going back to the VA, the ALJ didn't even rely on... Which gives you an argument that they didn't understand. The ALJ really didn't understand it. Whether or not he understood it... We have to deal with that. That's the point that you have to be arguing for her and not this thing about the Byrd case. I think you need to understand that. The other RFC assessment, to get back to Your Honor's question on the two baths, was the need for the therapy dog. That's documented in her medical record. There's a note from her doctor that the therapy dog is medically necessary. Yet there's no accommodation or discussion of the therapy dog in her RFC. So that hypothetical was never posed to a vocational expert. So it's, again, unknown. The ALJ in this case has left gaps in the RFC assessment, not allowing this court to do a meaningful review, leaving you to guess, because those questions were not presented to a vocational expert. So there's no evidence in the record if or how those two things would affect the person's, Ms. Rogers' ability to work. Unless there's other questions, I'll reserve the rest of my time for rebuttal. Thank you very much, sir. Mr. Mervis? Thank you, and may it please the Court, David Mervis on behalf... Good to have you with us. Are you with the Social Security Administration? Yes, sir. And you're a special assistant United States attorney? Yes, sir. For this case? Yes, sir. Good to have you here. Attorney for the commissioner operating under the auspices of the U.S. Attorney's offices. So we... Yes, go right ahead. Thank you. Without minimizing Ms. Rogers' history in this case, the ALJ thoroughly reviewed the evidence and explained why it supported a conclusion that Ms. Rogers could perform a range of work. Then that work ought to be simple, it ought to be low stress, and it ought to involve limited social interaction. What about... Let's skip over the VA stuff, but what about the argument opposing counsel raises that the ALJ was presented with evidence that this lady's menstrual cycle caused a change in behavior over time, and they raised that issue, but I did not see that the ALJ's opinion addressed that. Why wouldn't that be sufficient to require the ALJ to redo this and explain that issue? I respond to that in two ways. The first way, Your Honor, would be that the ALJ absolutely considered the longitudinal history here. So we've got months, about an 18-month period that the ALJ was reviewing. So the ALJ goes from, in fact, from the alleged onset date was May 2018, but the ALJ even discussed evidence before that. Continues on through the date of the decision, which is December of 2019. So the ALJ is considering the entire period and does so with particularity, with discussing how Ms. Rogers did over the course of that period of time. Did worse in mid-2018 when she wasn't engaged in therapy. Did better in 2019 when she re-engaged in therapy. There was improvement, as noted in the, excuse me, I apologize, the computer's beeping. I apologize. Now, the second thing I was. I mean, if they've raised the issue that this lady's cycle affects her ability to function and therefore is a factor to consider in a disability determination, isn't the ALJ required to say why that is or isn't accurate? I don't believe so, Your Honor, in this particular case. What are you arguing, a harmless error? What are you arguing? Well, what I'm. . . She raised it, you could ignore it. She raised it, you could ignore it. She did tell providers that that was part of what her symptoms were. But the treatment notes are what the ALJ notes and says that, well, those. . . That doesn't. . . It doesn't. . . What the ALJ discussing those treatment notes. The decision makes clear that that's not reflected in those treatment notes. The other. . . Does that directly affect her employability? If she were incapacitated for two weeks out of the month, absolutely, Your Honor. But that's not. . . Couldn't that have been considered by the ALJ? We'd argue that the ALJ did consider the entire record, didn't specifically mention that specific allegation. We're all on the same ground there. I will note that, again, the point here is that the ALJ considered how she did over the course of the entire 18 months and didn't treat every day or every note the same. There were fluctuations. It is absolutely true that the ALJ didn't specifically mention Ms. Rogers' menstrual cycle. I would say there are provisions that the commissioner. . . These are sub-regulatory. These are instructions to adjudicators that if there is evidence in the record that may cause harm to an individual, the decision writers shouldn't discuss. . . should take care with how they discuss that evidence. Now, again, the primary argument here is that the ALJ didn't miss any treatment notes and didn't miss any allegations. Ms. Rogers did better when she was engaged in therapy. That's what the treatment provider said. She did worse when she wasn't engaged in therapy. That's what the treatment provider said. But if it wasn't mentioned, how do we know whether or not it was even considered? Well, the ALJ did say that he considered all the evidence. We know that the ALJ isn't required to consider every single record. Now, if the. . . But if it specifically bears on the ultimate decision, isn't he or she required to articulate those grounds? If that. . . I guess the response to that, Your Honor, would be the. . . Every single. . . There's not a requirement that the ALJ address every single allegation, every single permutation of her symptomology. So she says a lot of things about her, the effects of this PTSD, and the ALJ considers how she does over the course of the period at issue. Ultimately, the ALJ's finding is supported by these treatment notes. So her statements are. . . The ALJ does consider and says they're not entirely consistent with the evidence that I've got. Now, it doesn't articulate every single statement that she made over the course of the record. That is true. Well, let me ask you about. . . In the plaintiff's memoranda in support of the motion for summary judgment on page 34 of the appendix, there's this statement describing the claimant here. She has her worst times. . . She said her worst times are during her monthly cycle. Her symptoms included. It explains what those are. Why isn't that sufficient to preserve that issue from your waiver argument? I guess I understood. . . What our waiver argument was is that she didn't argue this rationale of improvement. What Ms. Rogers has argued in district court was about opinion evidence and about the ALJ's assessment of that evidence. Now, if we're talking about a specific allegation, we didn't specifically argue that she didn't raise this argument. So our waiver argument pertained to . . . Well, if we find that this argument would be sufficient to require the ALJ to reconsider the opinion and explain that, and I take it you're agreeing now there is no waiver as to this argument about her cycle, wouldn't that be sufficient in and of itself to send the case back? If that were the court's holding, yes. Well, I mean, somebody's got to write this thing. Why don't you tell us why that's the wrong answer? It's the wrong answer because, Your Honor, the ALJ considers the longitudinal history. It considers the treatment notes. It considers what she says about her functioning writ large. Now, one line in the ALJ's decision, which, as I've indicated, is something that is particularly sensitive to this individual, that the ALJ might well have had a good reason to not specifically name in a decision, that's not a reason to send it back. What's a reason to send it back would be that there's no confidence that the ALJ considered Ms. Rogers' condition over the course of 18 months as reflected both in her statements and in her treatment notes and in the folks that took a look at this case. The state agency consultants took a look at this same evidence and gave in a finding, provided a finding that Ms. Rogers could indeed work. The ALJ considered that. Those are the state agency consultants. The treatment notes from Ms. Rogers' therapists say that when she's engaged in therapy, when she's on medication, which the ALJ discusses, she does better. But she is able to perform work at this reduced level, which we, I think, all agree, is a lower level of work or less stressful, less socially demanding than her previous work. So, again, the ALJ considers all of this evidence and puts it into a decision that is supported by substantial evidence. If it wasn't discussed in the report, how do we know how much weight the ALJ gave it? How do we assess that? Well, Your Honor, the ALJ doesn't give a specific amount of weight to one statement or a subjective description that Ms. Rogers alleges. The ALJ considers that amongst all of the symptoms that she's alleged. She says, like I said, she has made numerous allegations about the effect on her. But the weight that was attached to that particular problem that she had, wouldn't that be critical to the final decision made by the ALJ as to whether she could work 100 percent capacity? Respectfully, no, in the sense that the ALJ has to consider all the symptoms that she, or all her subjective statements about her symptoms. This is a generalized assessment, and there's not a requirement that the ALJ specifically name each and every allegation that she's made. That's administratively probably impossible. She said a lot of things about how her PTSD affects her, and the ALJ considers them together and says, these aren't entirely consistent with what I'm seeing in the treatment notes. What I'm seeing in the treatment notes don't reflect, well, today she's totally incapacitated, and the next time she's able to work. The treatment notes... And if he had said that, that might bring an end to this particular argument, but I don't think he did. What about the argument for the service dog? I mean, if she's got to have a service dog in order to function, isn't that going to figure into what kind of employment she can have? The ALJ did discuss the service dog. The ALJ says that she presented at the hearing with the service dog. That's not the same. I would posit that's not the same kind of factor. What the ALJ in the treatment... He came up with a conclusion that she can do certain functions in the national economy in order to hold a job. And maybe at the end of the day, that's correct. But if you go to an employment or to an employer, and in order for you to function in that job, you've got to bring this dog with you, maybe the dog claim is bogus, maybe it's valid. There are going to be certain numbers of employers who are not going to want that in their employment space. Wouldn't that be a factor they'd have to consider in making the final determination? The employer, that is, Your Honor, or the ALJ? No, the ALJ. No, Your Honor. And the reason is that the ALJ wasn't presented with evidence that that was necessary for her to work. She has a dog. What the treatment notes show, and this is at the sites here, 301, 310, is that she presented to her psychiatrist with a dog. She asked the psychiatrist to write her a note and say that this was a dog that helps me, that provides me with comfort. Fine. The psychiatrist writes that note. She comes and says, I want this to be a mobility service dog. The psychiatrist writes that note. That's not the same thing as an opinion that she is unable to work without that service dog. If that were an opinion that the ALJ had overlooked, then we'd be in a different situation. The ALJ doesn't have an opinion that she can't work without this service dog based on a doctor's assessment of her condition. This is simply the way that the doctor accommodated what she had asked for. And that's fine, but that's not something that the ALJ needed to account for in the residual functional capacity. Didn't find that it was a work preclusive or a work relevant limitation because she simply doesn't need it to work. There's not evidence that she needs it to work. So, can you go back and tell us exactly what you say the claimant waived in terms of the arguments here? What exactly are the issues that you say are waived? The argument that Ms. Rogers had presented is that somehow the ALJ, in this court, was that the ALJ didn't adequately or incorrectly assess her longitudinal history. So, as she got worse, as she got better, and that this, quote, rationale of improvement wasn't supportable. We argued, and as Judge Agee, you pointed out, that that wasn't the argument she made in district court. So, this rationale of improvement, it's a little different than this. So, she waived that? Is that what you're saying? She waived that by not arguing that in district court, that she didn't present that argument in district court. What we're talking about here today is a little different, and it's about the effects of her statements, her subjective statements, as to the fluctuation month-to-month, week-to-week. That's different. So, we didn't make the argument that that was waived. But, as we've been discussing here today, the ALJ considered the evidence of Ms. Rogers' treatment. Those treating notes that the ALJ considered, and there's no argument that Ms. Rogers, from Ms. Rogers, that the ALJ somehow missed a treating note, missed an opinion, that would have resulted in a different outcome. We simply got subjective statements that the ALJ did consider, though, as Judge Eisenhower, you noted, didn't specifically itemize every single statement that Ms. Rogers made. But that's simply not the standard, and what the ALJ did here provides a clear path to the conclusion that the ALJ reached. My point was, nowhere in the report does it show how much weight the ALJ gave those specific conditions in making the final analysis. And, Your Honor, my response would be that there isn't a requirement that the ALJ give weight to that specific, each specific subjective statement that Ms. Rogers makes. If there were that requirement, this would be a different case. We'd have a different set of cases to apply. But under the standard here, which is that this court be able to discern the ALJ's reasoning, the district court, of course, concluded that it could. Our position, of course, is that the district court was correct and that this court should affirm. Thank you. Thank you very much, sir. Commissioner Piemonte? Just a couple of points that I'd like to clarify. Excuse me, I'm going to go backwards. When you were asking Mr. Mervis about the need for the therapy dog, he's relying on a standard that if I had raised it, he would argue against. He's saying the doctor never said she couldn't work without the dog. That's not for the doctor to decide. It's for the ALJ to decide based upon a review of all of the evidence, including vocational testimony about whether or not the need for a therapy dog would affect the ability to work. He never asked the VE that question. Well, did you ask it? I didn't do the hearing. We didn't represent her in that hearing. Well, did whoever represented her in the agency proceedings, did they raise the issue of the therapy dog as a necessity for her work, and what was the evidence they used to base that argument upon? I'm sorry, Your Honor. My computer's not cooperating. I was trying to pull it up. As I stand here today, I can't answer that question. I don't have an independent recollection of if that question was asked. But what I do know, and it's in the medical record from Dr. Christenberry, she states the therapy dog is necessary. It's medically necessary. That's no different than a cane or a walker or some other assistive device being medically necessary. It may or may not affect an ability's... Yes, sir. Correct. Yes. Did the ALJ do that? Yes, that was before the ALJ. I can tell you it's exhibit 6F. Unfortunately, my computer's not cooperating. I can't give you the page. You go right ahead. You go right ahead. But don't tell us anymore that you're making excuses about you weren't representing her. You're the only one we have here. You are representing her, and you're responsible for all of it. I am, Your Honor. You're her lawyer. And I apologize that I cannot answer that question about if that question was asked. I should be able to, and I apologize. As for the menstrual cycle, the medical record documents she has good days. Well, in her case, it's good weeks, bad weeks. She, in this court, has repeatedly stated in Monroe, in Mascio, in Woods, that the ALJ must draw a clear and logical bridge from the evidence before them to the RFC finding. And there's evidence before this ALJ showing that there are periods of time when Ms. Rogers' functioning is worse than other times, yet the RFC assessment is that she's the same every day, every week, every month. And that's just not the case, and the medical evidence doesn't bear that out. And, therefore, the RFC assessment is unexplained, and you can't properly review it because the ALJ didn't provide any explanation, as he is required to do, as to why he didn't have a reason, why he found that there was no reason to say that there was a, you know, at one point she'd have this functioning, at another point she'd have another functioning. Unless there's other questions. Thank you very much, sir. Thank you. We appreciate, we appreciate counsel's arguments. The case will be taken under advisement, and we hope to see you back. All the best to you. Madam Clerk, we will adjourn for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, G. Steven Agee, Henry E. Hudson